| | CIVIL MINUTES – GENERAL | | 'O'    JS-6 |
|---|---|---|---|
| Case No. | 2:18-cv-02719-CAS(SKx) | Date | July 5, 2018 |
| Title | DIRECTORS GUILD OF AMERICA, INC. v. SUPERSTITION DOG WITH A BONE, INC. ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) - PETITIONER DIRECTORS GUILD OF AMERICA, INC.'S PETITION TO CONFIRM ARBITRATION AWARD (Dkt. 1, filed April 3, 2018)

## I.   INTRODUCTION

On April 3, 2018, petitioner Directors Guild of America, Inc. ("DGA") filed a petition to confirm an arbitration award pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). Dkt. 1 ("Petition"). In particular, DGA moves the Court to confirm a February 9, 2018 arbitration award captioned In the Matter of a Controversy Between Directors Guild of America, Inc. – and – Superstition Dog With a Bone, Inc. and Global Renaissance Entertainment Group, Inc. (re: Compensation, No. 10005510). The dispute arose from compensation claims for directors' work on a motion picture titled *Superstition*, which was produced by respondents Superstition Dog With a Bone, Inc. ("Superstition") and Global Renaissance Entertainment Group, Inc. ("Global"). Superstition is a signatory to DGA's collective bargaining agreement (the "Basic Agreement"). Global provided a theatrical guarantee of performance under the Basic Agreement for Superstition.

On May 11, 2018, DGA filed a memorandum of points of authorities in support of its petition. Dkt. 8 ("Memo"). On May 29, 2018, respondents filed an opposition to the petition. Dkt. 13 ("Opp'n"). On June 7, 2018, DGA filed a reply. Dkt. 14 ("Reply").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'    JS-6

| Case No. | 2:18-cv-02719-CAS(SKx) | Date | July 5, 2018 |
|---|---|---|---|
| Title | DIRECTORS GUILD OF AMERICA, INC. v. SUPERSTITION DOG WITH A BONE, INC. ET AL. | | |

On June 14, 2018, respondents filed an application for leave of court to accept and excuse the late filing of their opposition.[1] Dkt. 15.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

DGA alleges the following facts.

DGA and Superstition are parties to a collective bargaining agreement, the "Basic Agreement," for a term of June 8, 2014 through June 4, 2017. Petition ¶ 12. Global is contractually obligated to guarantee the performance of Superstition under its collective bargaining agreements with DGA, pursuant to the terms of its November 10, 2016 Theatrical Guarantee Agreement with DGA. Id. Article 2 of the Basic Agreement provides that all disputes shall be handled through a grievance and arbitration process, including disputes over the interpretation or application of any employee's personal services contract or deal memo. Id. ¶ 13.

On December 8, 2016, DGA filed a grievance against Global and Superstition, alleging a failure to pay directors Kevin Goetz and Michael Goetz (the "directors") the compensation and benefits required under a personal services agreement. Id. ¶ 14. On February 2, 2017, DGA served respondents with its Notice of Claim and Arbitration Claim, demanding arbitration of the December 8, 2016 grievance. Id. ¶ 15. The parties selected Barry Winograd (the "Arbitrator") to serve as the impartial arbitrator for this matter. Id. ¶ 16. An arbitration hearing was held on October 26, 2017 at DGA's offices in Los Angeles, California. Id. ¶ 17.

While neither party provides specific details concerning the underlying dispute, the Court has reviewed the arbitration proceeding records submitted by DGA and sets forth the following summary of the dispute regarding the directors' compensation.

---

[1]    The Court's April 11, 2018 minute order stated that respondents' deadline to file their opposition was "no later than May 25, 2018." See Dkt. 6. Despite respondents' apparently untimely opposition filing on May 29, 2018, the Court declines DGA's request to strike respondents' opposition, see Reply at 3, and considers respondents' arguments in reaching its conclusion below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:18-cv-02719-CAS(SKx) | Date | July 5, 2018 |
| Title | DIRECTORS GUILD OF AMERICA, INC. v. SUPERSTITION DOG WITH A BONE, INC. ET AL. | | |

The Basic Agreement provides that the cost of a motion picture is the basis for the directors' salary.  See Petition & Ex. B ("Basic Agreement").  In particular, the "cost of a motion picture as estimated by the Employer in good faith at the time of commencement of principal photography shall be the cost of such motion picture for the purpose of the schedule set forth in Paragraph 3–101."  Basic Agreement at 47.  In turn, paragraph 3–101 provides that, for films budgeted over $1,500,000, a director's minimum weekly compensation is $18,676.  Id. at 46.  Upon rendering pre-production services, a director becomes "pay-or-play" under the Basic Agreement, and the employer is then obligated to fully compensate the director—even if production is shut down before completion.  Petition & Ex. A ("Award") at 15.

During the term of the Basic Agreement, Superstition employed the directors, who were represented by DGA.  Award at 14.  The parties dispute the level of compensation owed to the directors.  A June 15, 2016 offer letter to the directors submitted by Superstition proposed $150,000 as compensation for the combined services for the two directors, and projected that the budget for the film would be $3.7 million.  Id. at 16.  The directors signed an agreement bearing the terms of the offer letter in August 2016 ("August 2016 agreements").  Id.

On October 14, 2016, the directors and a representative for Superstition signed "deal memos," which provided each director weekly compensation in accordance with the rate set forth in a Low Budget Sideletter ("LBSL")—described *infra*—for films with budgets *over* $3.75 million and under $8.5 million.  Id. at 23.  The directors commenced work on the film beginning October 17, 2016.  Id. at 14.

On November 4, 2016, Superstition applied to be a signatory company to the Basic Agreement for the film, and its application stated that the projected budget for the film was $6.7 million.  Id. at 18–19.  On November 9, 2016, Superstition became a signatory to the Basic Agreement.  See Petition & Ex. C ("letter of adherence").  The letter of adherence provided that Superstition would "accept, assume, and be bound by all the terms" of the Basic Agreement, including provisions governing the trusts for pension and health benefits.  Id.

On November 10, 2016, Superstition's representative sent a budget to DGA for $6.69 million, and as a consequence, DGA and Superstition executed the LBSL, which allowed the directors to be paid compensation at an amount lower than the compensation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:18-cv-02719-CAS(SKx) | Date | July 5, 2018 |
| Title | DIRECTORS GUILD OF AMERICA, INC. v. SUPERSTITION DOG WITH A BONE, INC. ET AL. | | |

set forth in the Basic Agreement. See Award at 21; Petition & Ex. D ("LBSL") at 93. In particular, the LBSL provides that for films with budgets greater than $5,500,000 but equal to or less than $8,500,000, directors may be paid a discounted "Level 4" salary of no less than 75% of the applicable minimum salary in Article 3 of the Basic Agreement. LBSL at 85. For films with budgets greater than $2,600,000 but equal to or less than $3,750,000, the LBSL provides that a director shall be compensated at a "Level 3" salary of no less than $75,000 for a minimum guarantee of 13 weeks. Id. at 82. Accordingly, Superstition's $6.69 million budget moved the film into a higher director salary range under the LBSL. Award at 21.

Days later, as principal photography was about to begin, financial problems developed. Id. at 22. Although principal photography did eventually begin on November 18, 2016, the necessary funds were not secured, and as a result, principal photography ended on November 21, 2016. Id. at 24.

Superstition compensated the directors in accordance with the terms of the August 2016 agreements at the salary level for film budgets below $3.7 million. Id. at 25. During arbitration proceedings, DGA asserted that Superstition's own budget, offered for LBSL approval, triggered a higher level of compensation, and that to the extent Superstition sought to rely on the August 2016 agreements this reliance was misplaced because it was not tied to the budget submitted by Superstition, and because the Basic Agreement supersedes the terms of agreement to which the directors may have agreed. Id. at 26–27. In turn, respondents argued that the August 2016 agreements set the rate of compensation, and the Arbitrator made note in his award that respondents characterized DGA's actions as "a cynical trap to secure forfeiture of twice the pay or play amounts." Id. at 27.

On February 9, 2018, the Arbitrator issued his arbitration opinion and award in this matter, which indicated that the parties were afforded "an opportunity to examine and cross-examine witnesses, and to introduce relevant documentary evidence. Petition ¶ 18. The Arbitrator concluded that

1. [DGA's] claim is sustained.
2. Respondents shall pay each director, Kevin Goetz and Michael Goetz, the amount of $100,240.30 plus additional late charges in the amount of $823.89. In addition,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 2:18-cv-02719-CAS(SKx) | Date | July 5, 2018 |
| Title | DIRECTORS GUILD OF AMERICA, INC. v. SUPERSTITION DOG WITH A BONE, INC. ET AL. | | |

for each director, respondents shall pay [DGA's] pension and health trust the balance of $2,897.01, plus liquidated damages in the amount of $579.40.
3. Pursuant to the stipulation of the parties, the undersigned retains jurisdiction for 90 days from the date of this Award to resolve any dispute over implementation of the remedy.

Id. On February 12, 2018, respondents wrote to the Arbitrator, contending that he "did not expressly address whether, 'if the trier of fact finds the higher budget tier to be applicable, the agreements must be reformed due to a fundamental mistake of fact.' " Id. ¶ 4. On March 20, 2018, the Arbitrator issued a written ruling denying respondents' request, stating that

> My ruling is that the request is untimely as my status in this matter is *functus officio*. That doctrine aside, the issue of contract reformation raised by [Respondents' counsel] is resolved in the decision by my conclusions that the respondents had entered into enforceable commitments under the labor agreement that had been relied upon by the Guild and the directors. Any previous separate, personal agreements were, in this context, superceded by application of the labor agreement. Further, it is the labor agreement that is the subject of the issues submitted for resolution, not reformation of an earlier agreement referred by [Respondents' counsel].

Id. ¶ 5 & Ex. G.

DGA asserts that the Arbitrator's decision is final and binding and seeks to confirm the February 9, 2018 award. Id. ¶¶ 19–22.

## III. LEGAL STANDARD

"[T]he Supreme Court [has] set a standard that permits only a limited review of an arbitrator's decision." Local Joint Exec. Bd. of Las Vegas v. Riverboat Casino, Inc., 817 F.2d 524, 527 (9th Cir. 1987). Thus "it is not the court's role to determine whether the arbitrator has reached the same result the court would have reached." Id. Nor is it the court's role "to decide the rightness or wrongness of the arbitrator's contract interpretation." Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp., 935 F.2d 1019, 1024 (9th Cir. 1991). "'[T]he district court must accord considerable deference to the arbitrator's judgment' and should not 'vacate the award because it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 2:18-cv-02719-CAS(SKx) | Date | July 5, 2018 |
| Title | DIRECTORS GUILD OF AMERICA, INC. v. SUPERSTITION DOG WITH A BONE, INC. ET AL. | | |

interpreted the agreement differently.'" Id. (quoting New Meiji Market v. United Food and Comm'l Workers Local Union 905, 789 F.2d 1334, 1335 (9th Cir. 1986)).

The Ninth Circuit has continuously held that judicial review of an arbitrator's decision "is both limited and highly deferential." Barnes v. Logan, 122 F.3d 820, 821 (9th Cir. 1997). An award must be confirmed if the arbitrator even "arguably construed or applied the contract and acted within the scope of [her] authority." Id. "As is apparent from the language, these standards are highly deferential to the arbitrator[s]." Johnson v. Wells Fargo Home Mortg., Inc., 635 F.3d 401, 414 (9th Cir. 2011). Vacatur on the ground that arbitrators exceeded their powers is proper "only when arbitrators purport to exercise powers that the parties did not intend them to possess or otherwise display a manifest disregard of the law," or "when the award is 'completely irrational.' " Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 997, 1002–03 (9th Cir. 2003) (en banc) (quoting Todd Shipyards Corp. v. Cunard Line, Ltd., 943 F.2d 1056, 1059–60 (9th Cir. 1991)).

"The burden of establishing grounds for vacating an arbitration award is on the party seeking it." U.S. Life Ins. Co. v. Superior Nat'l Ins. Co., 591 F.3d 1167, 1173 (9th Cir. 2010). In considering whether to vacate an award, district courts apply "an extremely limited review authority." Kyocera, 231 F.3d at 998.

## IV. DISCUSSION

DGA requests that the Court confirm the February 9, 2018 arbitration award. Memo. At 5–6. DGA asserts that the Basic Agreement provides that the award of an arbitrator shall be final and binding on the DGA, the employee, and the employer, and it contends that here, the Arbitrator issued a "clear and concise determination" of the issues that the parties submitted for consideration. Id. at 5. DGA argues that because the parties bargained for and agreed to accept the Arbitrator's construction of the Basic Agreement, the Court is now required to confirm the award as long as the "arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." Id. at 5–6.

In opposition, respondents request that the Court "vacate or alternatively modify the Award." Opp'n at 1. Respondents contend that the Arbitrator's award fails to address the following mistake of fact: that Superstition "reasonably understood" that the directors were hired "as a unit," and that the directors would share the compensation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 2:18-cv-02719-CAS(SKx) | Date | July 5, 2018 |
| Title | DIRECTORS GUILD OF AMERICA, INC. v. SUPERSTITION DOG WITH A BONE, INC. ET AL. | | |

based on personal contracts executed prior to the application of the Basic Agreement. As such, even if the film budget exceeded original estimates, respondents argue that the directors' overall compensation would move from $150,000 to $182,091, i.e., an increase of $32,090, to be *split* between the two directors. Id. Respondents explain that they addressed this issue with the Arbitrator on February 12, 2018 when they asserted that the Arbitrator failed to take into account the evidence concerning the compensation for the directors, and thus did not address whether "the agreements must be reformed due to a fundamental mistake of fact." Id. at 3. In response, the Arbitrator declined to alter the award, noting that any personal agreements were superseded by the Basic Agreement, and that the Basic Agreement is the subject of the issues submitted for resolution, "not reformation of an earlier agreement referred to by [respondents' counsel.]." Id. Respondents argue that the Arbitrator's response "appears to [miss] the point completely," as" [i]t was not an earlier agreement that needed to be reformed, but the two deal memos executed one each by the directors on Guild deal memo forms, one of which should have been deemed rescinded." Id.

In addition, respondents argue that the facts demonstrate that they did not have sufficient funds to support a higher budget that would raise the directors' compensation to $182,091, and that DGA "allowed the production to continue while efforts to raise additional funds were ongoing," which demonstrates that the higher budget was *contingent*. Id. at 3. When fundraising efforts failed—and filming failed to move forward under a higher budget warranting a compensation increase—respondents contend that the directors were fully compensated under the terms of the original operative agreement. Id.

Last, respondents assert that insofar as DGA attempts to hold Superstition accountable for a *higher* rate of compensation under a budget that never materialized, this amounts to a forfeiture under well-established legal doctrine. Id. at 4–5 (citing O'Flaherty v. Belgum, 115 Cal. App. 4th 1044, 1060 (2004)).

In reply, DGA asserts that the Arbitrator already determined respondents' contractual obligations with respect to the directors, and that the award addressed all of the issues presented to the Arbitrator and provided a clear and concise determination. Reply at 4. DGA argues that the Arbitrator squarely addressed respondents' contention that their contractual obligations were to "only *one* director, not two," and that the Court cannot substitute its own interpretation of the facts and the contract for that of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'    JS-6 |
|---|---|---|---|
| Case No. | 2:18-cv-02719-CAS(SKx) | Date | July 5, 2018 |
| Title | DIRECTORS GUILD OF AMERICA, INC. v. SUPERSTITION DOG WITH A BONE, INC. ET AL. | | |

Arbitrator. Id. at 4. DGA further argues that, because respondents have not demonstrated that the Arbitrators did not act within the scope of his authority, and because the award orders the payment of compensation and benefits pursuant to the Basic Agreement, the award must be confirmed. Id. at 5.

The Court concludes that the arbitration award should be confirmed. At oral argument, counsel for respondents clarified that the Arbitrator failed to address the mistake of fact in his award, and that this mistake of fact concerned the compensation of the two directors on a joint basis, as provided for in the August 2016 agreements between the directors and Superstition. However, upon review of the record, the Court determines that the Arbitrator rejected this argument for joint compensation of the directors and any claimed mistake through his finding that the Basic Agreement, the letter of adherence, the theatrical guaranty, the budget, and the LBSL submitted by Superstition superseded any previous agreements between the directors and Superstition. Moreover, it appears that the Arbitrator reviewed these agreements and concluded that DGA and the directors relied on these agreements in going forward with filming, and in expectation of compensation of approximately $100,000 for each director.[2] Award at 28–29. When asked at oral argument whether counsel for respondents was familiar with any provision in any agreement that supported the contention that failure to raise sufficient funds to complete production worked a rescission or reformation of the Basic Agreement or

---

[2]  Counsel for DGA asserted at oral argument that although the Basic Agreement permits only one director per film, if an employer wants to hire two directors then the employer may seek a waiver from DGA. Counsel asserted that any resulting waiver does not mean that the employer gets to pay only one director in violation of the Basic Agreement. This assertion appears supported by the Basic Agreement, which provides in section 7-208 that there "will be only one Director assigned to direct a motion picture at any given time," although DGA shall not "unreasonably withhold its consent to a waiver" when two directors applies for the same position based on professional necessity. See Basic Agreement at 54. The Basic Agreement further provides that the minimum salaries set forth in section 3-100 "shall govern the employment of Directors on theatrical motion pictures," and section 17-115 provides that "[n]o waiver of minimum terms herein provided (unless specifically authorized by the provisions of this BA) may be granted except by the Guild." Id. at 46, 68.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:18-cv-02719-CAS(SKx) | Date | July 5 2018 |
| Title | DIRECTORS GUILD OF AMERICA, INC. v. SUPERSTITION DOG WITH A BONE, INC. ET AL. | | |

LBSL, counsel could point to no language that supported this assertion, a conclusion which the Court has confirmed through its own review of these agreements.[3]

In sum, upon review of the record it appears that the Arbitrator looked to the Basic Agreement, the LBSL, and Superstition's budget to derive the directors' compensation. Award at 28. The Arbitrator concluded that Superstition's November 2016 budget—prepared by an employee of Superstition—demonstrates that respondents "intended to commit to the [budget] made to the Guild and the directors," which was a precondition for production under the LBSL. Id. at 29. Moreover, the Arbitrator observed that the directors had rendered "considerable" services that included pre-production and principal photography that triggered the pay-or-play provisions of the Basic Agreement. Id. at 15. As such, the Arbitrator's conclusion that respondents owe approximately $100,240.30 to each director appears supported by the record, in light of respondents' own submission of a $6.69 million budget—approved by DGA—which triggered a Level 4 compensation for the directors under the LBSL. Respondents fail to demonstrate how the Arbitrator, in issuing the award, exceeded his scope of authority or was completely erroneous in his findings. Accordingly, the Court concludes that the Arbitrator acted within the scope of his authority.

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** DGA's petition to confirm the arbitration award.

IT IS SO ORDERED.

| | 00 : 00 |
|---|---|
| Initials of Preparer | CMJ |

---

[3] Counsel for respondents additionally asserted at oral argument that the directors knew that Superstition did not have the requisite funds to complete the film at the outset of production. To the extent counsel was arguing that the later agreements—the Basic Agreement, the letter of adherence, and the LBSL—were contingent on Superstition's ability to secure the necessary funding, that contention is not supported by the language of these agreements.